2014-1331, -1371

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

HOYT A. FLEMING,

Plaintiff-Appellant,

v.

ESCORT, INC. and BELTRONICS USA, INC.,

Defendants-Cross Appellants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF IDAHO IN CV-09-105,
JUDGE B. LYNN WINMILL**

---

**RESPONSE AND REPLY BRIEF OF PLAINTIFF-APPELLANT
HOYT A. FLEMING**

Michael S. Dowler
Park, Vaughan, Fleming & Dowler, LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
(713) 821-1540
mike@parklegal.com

Attorneys for Plaintiff-Appellant, Hoyt
A. Fleming

July 30, 2014

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES .................................................. iv

SUMMARY OF THE ARGUMENT ...................................... 1

ARGUMENT ...................................................................... 2

I. THE DISTRICT COURT ERRED WHEN HOLDING THAT
MR. ORR'S TESTIMONY WAS PROPERLY CORROBORATED ............ 3

   A. The District Court Erred As A Matter Of Law ........................ 3

   B. Substantial Evidence Does Not Support The District Court's
Denial Of Mr. Fleming's Renewed JMOL ................................ 8

   C. The District Court Also Erred As A Matter Of Law By Mixing
The Tests For Anticipation And Obviousness ........................ 16

II. THE DISTRICT COURT ERRED WHEN HOLDING THAT
CONCLUSORY TESTIMONY SUPPORTS THE INVALIDITY
VERDICT ...................................................................... 18

   A. None Of Escort's Witnesses Identified Any Element Of Any
Claim, How It Was Construed, Or How It Corresponds To
The Prior Art .............................................................. 18

   B. Escort Does Not Substantively Challenge The Remainder
Of This Portion Of Mr. Fleming's Appeal ............................ 27

III. THE DISTRICT COURT ERRED IN FINDING THE ORR PRIOR
INVENTION HAD NOT BEEN SUPPRESSED OR CONCEALED ........... 29

   A. The District Court's Decision Cannot Be Reconciled With
The Evidence ............................................................. 30

   B. Escort's Opposition Brief Unwittingly Concedes Escort/Orr
Abandoned/Suppressed And That The District Court Erred ........ 32

IV. FLEMING'S RESPONSE TO ESCORT'S CROSS APPEAL ...................... 37

    A.   Escort Misstates The Appellate Subject Matter ....................................... 37

    B.   Escort's Cross Appeal Is Irrelevant/Moot Because It Raises Only Harmless Error .......................................................................................... 39

    C.   Escort Misstates The Appellate Standard Of Review ............................ 40

    D.   Escort Incorrectly Describes The Law .................................................... 43

    E.   Escort Incorrectly Describes The Trial Evidence ................................... 47

    F.   Escort Incorrectly Describes The District Court's Decision ................... 49

    G.   This Court's Precedent Expressly Rejects Escort's Only Legal Argument ................................................................................................. 52

V. CONCLUSION .............................................................................................. 55

CERTIFICATE OF FILING AND SERVICE .........................................................

CERTIFICATE OF COMPLIANCE ........................................................................

# TABLE OF AUTHORITIES

## Cases

*Anderson v. City of Bessemer City,*
    470 U.S. 564 (1985) ..................................................................... 42, 43, 51

*Apotex U.S.A., Inc. v. Merck & Co.,*
    254 F.3d 1031 (Fed. Cir. 2001) ................................................... 31

*Arcelormittal France v. AK Steel Corp.,*
    2013 U.S. Dist. LEXIS 153416 (D. Del. October 25, 2013) ...................... 53

*Bio-Technology General Corp. v. Genentech, Inc.,*
    80 F.3d 1553 (Fed. Cir. 1996) ..................................................... 39

*Bose Corp. v. Consumers Union of United States, Inc.,*
    466 U.S. 485 (1984) ................................................................... 43

*Brown v. Barbacid,*
    276 F.3d 1327 (Fed. Cir. 2002) ................................................... 4, 9

*Brunswick Corp. v. British Seagull Ltd.,*
    35 F.3d 1527 (Fed. Cir. 1994) ..................................................... 23

*C.R. Bard, Inc. v. M3 Systems, Inc.,*
    157 F.3d 1340 (Fed. Cir. 1998) ................................................... 45, 54

*Connell v. Sears, Roebuck & Co.,*
    722 F.2d 1542 (Fed. Cir. 1983) ................................................... 17, 28

*Cooper v. Goldfarb,*
    154 F.3d 1321 (Fed. Cir. 1998) ................................................... 6

*Dayco Prods., Inc. v. Total Containment, Inc.,*
    329 F.3d 1358 (Fed. Cir. 2003) ................................................... 20

*Ecolab, Inc. v. FMC Corp.,*
    569 F.3d 1335 (Fed. Cir. 2009) ................................................... 19, 23, 25, 27

*Ferag AG v. Quipp, Inc.,*
    45 F.3d 1562 (Fed. Cir. 1995) ...................................................... 41

*Fox Grp., Inc. v. Cree, Inc.,*
    700 F.3d 1300 (Fed. Cir. 2012) .................................................... 37

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
    582 F.3d 1288 (Fed. Cir. 2009) ............................... 19, 23, 25, 27

*Fujikawa v. Wattanasin,*
    93 F.3d 1559 (Fed. Cir. 1996) ...................................................... 32

*Hambsch v. Dep't of the Treasury,*
    796 F.2d 430 (Fed. Cir. 1986) ................................................. 43, 51

*Hester Indus., Inc. v. Stein, Inc.,*
    142 F.3d 1472 (Fed. Cir. 1998) ............................................. 41, 44

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
    882 F.2d 1556 (Fed. Cir. 1989) ............................................. 38, 39

*In re Amos,*
    953 F.2d 613 (Fed. Cir. 1991) ................................................. 45, 54

*In re Clement,*
    131 F.3d 1464 (Fed. Cir. 1997) ............................................. 41, 44

*In Re Dinsmore,*
    No. 2013-1637, slip op. (Fed. Cir. June 10, 2014) ...................... 46

*In re NTP, Inc.,*
    654 F.3d 1279 (Fed. Cir. 2011) .......................................... 4, 9, 28

In re Serekin,
    479 F.3d 1359 (Fed. Cir. 2007) .................................................... 45

*In re Watkinson,*
    900 F.2d 230 (Fed. Cir. 1990) ...................................................... 46

*In re Weiler,*
 790 F.2d 1576 (Fed. Cir. 1986) ........................................... 45, 46, 54

*Juicy Whip, Inc. v. Orange Band, Inc.,*
 292 F.3d 728 (Fed. Cir. 2002) ............................................. passim

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,*
 863 F.2d 867 (Fed. Cir. 1988) ................................................. 53

*Knorr v. Pearson,*
 671 F.2d 1368 (CCPA 1982) ..................................................... 6

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.,*
 322 F.3d 1335 (Fed. Cir. 2003) ........................................... passim

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs, Inc.,*
 628 F.3d 1359 (Fed. Cir. 2010) .................................................. 6

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
 358 F.3d 898 (Fed. Cir. 2004) ................................................. 53

*Linear Tech. Corp. v. Int'l Trade Comm'n,*
 566 F.3d 1049 (Fed. Cir. 2009) ................................................. 4

*Medtronic, Inc. v. Guidant Corp.,*
 465 F.3d 1360 (Fed. Cir. 2006) ............................................... 45

*Mentor Corp. v. Coloplast, Inc.,*
 998 F.2d 992 (Fed. Cir. 1993) ................................................. 44

*Miles Labs., Inc. v. Shandon, Inc.,*
 997 F.2d 870 (Fed. Cir. 1993) ................................................. 42

*Multiform Desiccants, Inc. v. Medzam, Ltd.,*
 133 F.3d 1473 (Fed. Cir. 1998) ............................................... 53

*NTP, Inc. v. Research in Motion, Ltd.,*
 418 F.3d 1282 (Fed. Cir. 2005) ............................................... 40

*Panduit Corp. v. Dennison Mfg. Co.,*

836 F.2d 1329 (Fed. Cir. 1987) .................................................................. 40

*Pannu v. Storz Inst., Inc.,*
    258 F.3d 1366 (Fed. Cir. 2001) .......................................................... 45, 46

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,*
    866 F.2d 228 (7th Cir. 1988) ............................................................... 42

*Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,*
    732 F.2d 903 (Fed. Cir. 1984) ............................................................ 43

*Sage Prods., Inc. v. Devon Indus., Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997) .......................................................... 23

*Schumer v. Lab. Computer Sys., Inc.,*
    308 F.3d 1304 (Fed. Cir. 2002) .................................................... passim

*Scripps Clinic & Res. Found. v. Genentech, Inc.,*
    927 F.2d 1565 (Fed. Cir. 1991) .......................................................... 44

*Serrano v. Telular Corp.,*
    111 F.3d 1578 (Fed. Cir. 1997) .......................................................... 40

*Shindelar v. Holdeman,*
    628 F.2d 1337 (CCPA 1980) .............................................................. 31

*Slip Track Systems, Inc. v. Metal-Lite, Inc.,*
    304 F.3d 1256 (Fed. Cir. 2002) .......................................................... 4, 9

*Synthes USA, LLC v. Spinal Kinetics, Inc.,*
    734 F.3d 1332 (Fed. Cir. 2013) .......................................................... 53

*Taurus Ip, LLC v. Daimlerchrysler Corp.,*
    726 F.3d 1306 (Fed. Cir. 2013) .......................................................... 4, 9

*TechSearch, L.L.C. v. Intel Corp.,*
    286 F.3d 1360 (Fed. Cir. 2002) .......................................................... 19

*The Barbed Wire Patent Case,*
    143 U.S. 275 (1882) ...................................................................... 5, 7

*Union Carbide v. Shell Oil Co.,*
   308 F.3d 1167 (Fed.Cir.2002) ................................................................... 5, 7

*Verizon Servs. Corp. v. Vonage Holding Corp.,*
   503 F.3d 1295 (Fed. Cir. 2007) ................................................................ 40

**Statutes**

35 U.S.C. § 102 .................................................................................... 1, 16

35 U.S.C. § 102(g) .............................................................................. 2, 3, 37

35 U.S.C. § 103 .................................................................................... 1, 16

35 U.S.C. § 251 .................................................................................. 41, 44

35 U.S.C. 252 ........................................................................................ 38

Mr. Fleming hereby replies to Escort's response to Mr. Fleming's opening appeal brief and opposes Escort's cross appeal.

## SUMMARY OF THE ARGUMENT

Mr. Fleming's appeal addresses three separate issues, each independently warranting reversal of the district court's judgment invalidating claims 1, 18, 45, 47, and 48 in the '038 patent.

The first issue concerns the district court's ruling upholding the jury verdict invalidating claims 1, 18, 45, 47, and 48, despite the district court: (a) conceding there was no evidence corroborating the prior invention of each limitation of each invalidated claim, and (b) arguing the "expansive and flexible" standard set forth in *KSR* for determining obviousness under 35 U.S.C. § 103 should be used when determining anticipation under 35 U.S.C. § 102. (*Infra* at pp. 3-18.)

The second issue concerns the district court's ruling upholding the jury verdict invalidating claims 1, 18, 45, 47, and 48, despite the district court conceding there was no testimony addressing each claim limitation, no testimony construing each claim limitation, and no testimony showing how each claim limitation corresponds to the alleged prior art. (*Infra* at pp. 18-29.)

The third issue concerns the district court's ruling upholding the jury verdict invalidating claims 1, 18, 45, 47, and 48, despite all the evidence showing the alleged prior invention of those claims was impermissibly suppressed/concealed

under 35 U.S.C. § 102(g) by the alleged prior inventor admittedly keeping it secret (*i.e.,* hidden from the public) and dormant (*i.e.,* not worked on) for more than 3 years following his alleged reduction to practice while his company went through a bankruptcy. (*Infra* at pp. 29-37.)

Finally, Escort's cross appeal should be dismissed. As an initial matter, it raises only harmless error since Escort will remain liable for its infringement no matter how the Court rules on Escort's cross appeal. That aside, Escort's cross appeal misstates the appellate standard of review, misstates the district court's decision, misstates the trial evidence, misstates the controlling law, and even misstates the appellate subject matter in terms of which patent claims are subject to the district court's ruling. In short, it lacks merit and should be dismissed. (*Infra* at pp. 37-55.)

## ARGUMENT

The theme to this appeal is Escort's failure to cite the appellate record, or when it does so, to do so accurately. While it is a chore to "double-check" a party's citations, doing so in this case shows the appellate record and this Court's precedent simply do align with Escort's arguments or its factual/legal citations.

## I.    THE DISTRICT COURT ERRED WHEN HOLDING THAT MR. ORR'S TESTIMONY WAS PROPERLY CORROBORATED

### A.    The District Court Erred As A Matter Of Law

The parties' present dispute (and the propriety of the district court's ruling) regarding the jury's invalidity verdict concerning '038 patent claims 1, 18, 45, 47, and 48 turns on an issue of law.   The parties disagree whether an invalidity analysis under 35 U.S.C. § 102(g) requires documentary evidence corroborating each limitation of each challenged claim.   Mr. Fleming contends that documentary evidence must corroborate each claim limitation (Fleming Opening Br. at pp. 13-19), whereas Escort contends that the oral testimony of interested witnesses unrelated to the claim limitations suffices (Escort Opp. Br. at pp. 32-34).

The district court took inconsistent positions on the issue.   It agreed with Mr. Fleming when instructing the jury (without any objection from Escort), stating:

> The oral testimony of the alleged inventor, by itself, is not enough to prove that he conceived and/or reduced to practice the invention or did so by any certain date.   The law requires that the oral testimony must be "corroborated," which means that there must be at least some documentary evidence that proves the alleged inventor conceived and reduced to practice the claims of the '038 and '653 patents.

(A7823; A6401:12:5-14:15.)   Nevertheless, the district court took the opposite position when denying Mr. Fleming's renewed JMOL:

> Fleming argues that the corroboration evidence must corroborate every element of every Claim that Escort seeks to invalidate.   Yet Fleming cites no case so holding.   Fleming's promotion of a rigid standard does not align with the rule of reason and ignores *KSR's*

> holding that obviousness is to be judged by an 'expansive and
> flexible' standard. *KSR*, 550 U.S. at 415. Ultimately, the
> corroboration requirement is intended to determine credibility, and
> such evidence could establish the credibility of the purported inventor
> without establishing every element of every Claim. That is the case
> here.

(A46-47.)[1]  Because the district court based its decision on an incorrect

understanding and application of the law, its decision denying Mr. Fleming's

renewed JMOL on that basis must be reversed.

Contrary to the district court's analysis and holding, this Court's precedent

unequivocally requires evidence corroborating each limitation of each challenged

patent claim as existing in the prior art. *Lacks Indus., Inc. v. McKechnie Vehicle

Components USA, Inc.,* 322 F.3d 1335, 1348-51 (Fed. Cir. 2003); *In re NTP, Inc.,*

654 F.3d 1279, 1291-95 (Fed. Cir. 2011); *Juicy Whip, Inc. v. Orange Band, Inc.,*

292 F.3d 728, 737-43 (Fed. Cir. 2002); *Slip Track Systems, Inc. v. Metal-Lite, Inc.,*

304 F.3d 1256, 1265 and 1269 (Fed. Cir. 2002); *Brown v. Barbacid*, 276 F.3d

1327, 1336 (Fed. Cir. 2002); *Taurus Ip, LLC v. Daimlerchrysler Corp.*, 726 F.3d

1306, 1323-24 (Fed. Cir. 2013). *See also, Linear Tech. Corp. v. Int'l Trade

Comm'n,* 566 F.3d 1049, 1068 (Fed. Cir. 2009).

As this Court's precedent further confirms, the corroboration requirement

(of each claim limitation), at least as applied in this case, must consist of

---

[1] The district court's legal error mixing anticipation and obviousness is addressed
below. (*Infra* at pp. 16-18.)

documentary evidence where Escort's only witnesses are indisputably biased and hold direct interests in the outcome of the case, *i.e.,* Mr. Orr is the alleged prior inventor and an ex-employee and now full-time consultant for Escort (A6083:234:8-24; A6124:100-102), Mr. Kuhn is Escort's long-time employee (A6083:234-8-16; A6222:222:20-21), and Mr. Humphrey is Escort's outside counsel (A6222:223:2-11). This Court stated as much in *Lacks Indus., Inc.,* holding:

> A review of the relevant case law reveals a clear requirement that such oral testimony by interested parties must be corroborated by documentary testimony. Starting with the Supreme Court's decision in *The Barbed Wire Patent Case,* 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154 (1882), and ending with our recent decision in *Union Carbide v. Shell Oil Co.,* 308 F.3d 1167, 1189, 64 USPQ2d 1545, 1560 (Fed.Cir.2002), courts have consistently required documentary corroboration of oral testimony by interested parties presented to invalidate a patent. For example, in *Union Carbide* we held "[u]ncorroborated oral testimony by interested parties is insufficient as a matter of law to establish invalidity of [a] patent." 308 F.3d at 1189, 64 USPQ2d at 1560 (holding the oral testimony of two Shell employees was insufficient to prove anticipation because it was otherwise uncorroborated) (citation omitted); *accord Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 740-43, 63 USPQ2d 1251, 1259-62 (Fed.Cir.2002) (holding oral testimony by six interested witnesses uncorroborated by documentary evidence was not sufficient evidence to support a jury's finding of anticipation). The evidence at issue here consists of oral testimony by three Hayes employees, all of whom testified that all of the prototype wheels used in public or sold by Hayes had voids or gaps in the adhesive pattern. Because this oral testimony is not of such a character as to differentiate it from that rejected in the precedents cited above, we conclude that the Special Master did not err in not accepting the testimony of one witness to corroborate that of another.

322 F.3d 1335, 1350 (Fed. Cir. 2003).

Escort's argument that this Court's precedent does not require corroboration of each limitation of each challenged patent claim is distinguishable.  For example, Escort cites *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs, Inc.,* 628 F.3d 1359, 1374 (Fed. Cir. 2010) for the proposition that "every point" need not be corroborated.  (Opp. Br. at p. 32.)  The "every point" mentioned in *Lazare* is not directed to each limitation of each challenged patent claim but rather is directed to each point in dispute between the parties.  Escort's citations to *Knorr v. Pearson,* 671 F.2d 1368 (CCPA 1982) (discussing "every point" of a reduction to practice) and to *Cooper v. Goldfarb,* 154 F.3d 1321, 1330 (Fed. Cir. 1998) (discussing "every factual issue contested by the parties") are distinguishable for the same reason.  (Opp. Br. at pp. 32-33.)

Indeed, Mr. Fleming concedes that not "every point" or "every factual issue contested by the parties" must be corroborated.  For example, Mr. Fleming does not dispute that certain aspects of the interested witness' testimony need not be corroborated, such as their educational background, employment history, family relationships, etc.  But, when it comes to the most critical aspects of their oral testimony*, i.e.,* whether each claim limitation was present in the prior art, those disputed facts must be corroborated.  Indeed, if the subject matter of the claim limitations themselves need not be corroborated (as Escort and the district court

contend), the corroboration requirement and the premise under which this Court has consistently applied it would evaporate, leaving behind a hollow evidentiary standard in which the most critical aspect of the prior invention issue (*i.e.,* the presence of each claim limitation in the prior art) need not be corroborated. That clearly is not the law of this Court or the U.S. Supreme Court. (*See supra* at pp. 4-6, citing in *The Barbed Wire Patent,* 143 U.S. 275 (1882); *Union Carbide,* 308 F.3d at 1189 (Fed. Cir. 2002); *Juicy Whip,* 292 F.3d at 740-43 (Fed. Cir. 2002); *Lacks Indus.*, 322 F.3d at 1350 (Fed. Cir. 2003).)

Accordingly, because the district court erred as a matter of law in holding that not every claim limitation must be corroborated, its corresponding order denying Mr. Fleming's renewed JMOL regarding '038 patent claims 1, 18, 45, 47, and 48 must be reversed. A remand is not appropriate since—despite the district court's error of law—it reviewed the evidence and concluded there was no corroborating evidence for each limitation of the disputed claims. (A46-47 ("Ultimately, the corroboration requirement is intended to determine credibility, and such evidence could establish the credibility of the purported inventor without establishing every element of every Claim. That is the case here.").) In other words, had the district court correctly applied the law, its findings dictate the granting of Mr. Fleming's renewed JMOL. Thus, a reversal with no remand is the appropriate remedy.

## B.   Substantial Evidence Does Not Support The District Court's Denial Of Mr. Fleming's Renewed JMOL

The district court evaluated the trial evidence and determined it did not corroborate each limitation of claims 1, 18, 45, 47, and 48 in the '038 patent. Nevertheless, the district court denied Mr. Fleming's renewed JMOL on that issue because, as its holding shows, it does not believe the law requires such corroboration:

> Fleming argues that the corroboration evidence must corroborate every element of every Claim that Escort seeks to invalidate. Yet Fleming cites no case so holding. Fleming's promotion of a rigid standard does not align with the rule of reason and ignores *KSR's* holding that obviousness is to be judged by an 'expansive and flexible' standard. *KSR,* 550 U.S. at 415. Ultimately, the corroboration requirement is intended to determine credibility, and such evidence could establish the credibility of the purported inventor without establishing every element of every Claim. That is the case here.

(A46-47.) Despite the district court's finding that the trial evidence does not corroborate each claim limitation, Escort requests that this Court reevaluate the allegedly corroborating evidence to reach a contrary conclusion. To the extent the Court reevaluates the evidence, the following analysis shows none of that evidence corroborates any of the limitations in claims 1, 18, 45, 47, and 48, much less all of them as would be required to establish a prior conception and reduction to practice sufficient to invalidate those claims.

As described in Mr. Fleming's opening brief, Mr. Orr generally, albeit vaguely, testified that he conceived Mr. Fleming's invention in 1988 and reduced it

to practice in 1996, several years before Mr. Fleming first filed a patent application in 1999 that led to the '038 and '653 patents.  (Opening Br. at p. 14.)   While Escort's opposition brief refers to "hundreds" and "a vast number" of corroborating documents (Opp. Br. at p. 34), the trial evidence shows—and Escort does not dispute—that all of those documents are subsumed in 20 trial exhibits Escort used with Mr. Orr and Dr. Grindon (Escort's technical expert).[2]

Mr. Fleming cross-examined both gentlemen about what each document did and did not disclose, including asking them whether and where in each (or any) of those 20 documents they disclosed/corroborated certain specific limitations of '038 patent claims 1, 18, 45, 47, and 48.  *Lacks Indus.,* 322 F.3d at 1348-51 (Fed. Cir. 2003) (requiring corroboration of each claim element); *Juicy Whip,* 292 F.3d at 737-43 (Fed. Cir. 2002) (same); *In re NTP, Inc.,* 654 F.3d at 1291-94 (Fed. Cir. 2011) (requiring corroboration of disputed claim limitations); *Slip Track,* 304 F.3d at 1265 and 1269 (Fed. Cir. 2002) (same); *Brown*, 276 F.3d at 1336 (Fed. Cir. 2002) (requiring corroboration of disputed claim limitations); *Taurus*, 726 F.3d at 1323-24 (Fed. Cir. 2013) (requiring corroboration of all elements).

More specifically, Mr. Fleming asked both Mr. Orr and Dr. Grindon to show where any of the allegedly corroborating documents disclosed the following

---

[2] All of Escort's citations to allegedly corroborating documents fall within these 20 trial exhibits.  (Opp. Br. at pp. 34-39.)

limitations of the following claims in the '038 patent: (1) a radar detector that includes a GPS (see claim 1(b), claim 18(c), and claim 45(b)[3]); (2) a predetermined lockout distance (see claim 1(c) and claim 45(b)[4]); and (3) a lockout frequency (see claims 47-48). (A58:6:49-58; A59:7:53-61; A60:10:26-42; A6148:198:19-A6156:231:3; A6341:115:1-A6345:129:17.) Consistent with the district court's conclusion (A46-47), both gentlemen admitted that none of those documents shows any of those claim elements.[5] (A6148:198:19-A6156:231:3; A6341:115:1-A6345:129:17.)[6]

Escort now criticizes Mr. Fleming for not using the exact claim language during his cross-examination of Mr. Orr (Opp. Br. at p. 36-37), but Escort neglects to tell the Court that Mr. Orr was a lay witness who testified he was unable to answer questions using actual claim language because he did not understand such language (A6171:291:10-A6172:293:19), a point the district court acknowledged

---

[3] This element also applies to claims 47-48 since those two claims depend from claim 45. (A60.)

[4] This element also applies to claims 47-48 since those two claims depend from claim 45. (A60.)

[5] The district court's opinion also refers to the oral testimony of John Kuhn (Escort's chief technical officer) and Tom Humphrey (Escort's outside counsel). (A47.) The court only generically refers to their oral testimony and fails to refer to or cite any corroborating documentary evidence, and Mr. Fleming is not aware of any.

[6] Mr. Fleming's technical expert, Dr. Bartone, testified to the same thing on rebuttal. (A6364:206:8-A6365:212:21; A6369:227:2-A6375:251:9.)

when denying a different one of Mr. Fleming's renewed JMOLs. (A44 ("Orr did testify that he had no expertise in interpreting patent claims.").) Nor did Escort ever object at trial that Mr. Fleming's cross-examination was in any way misleading in this regard.

More importantly, despite bearing the burden of showing substantial evidence (with an underlying clear and convincing evidence standard) to support the jury verdict, Escort's opposition brief fails to show that any of the 20 allegedly corroborating trial exhibits evidences any of the limitations in claims 1, 18, 45, 47, and 48 of the '038 patent, much less all of them as would be required to establish a prior conception (in 1988) or a reduction to practice (in 1996) sufficient to invalidate those claims. Escort merely argues that the evidence corroborates Mr. Orr's "radar detector/GPS system" (Opp. Br. at p. 34), his "work" (*id.* at p. 35), and certain technology concepts un-tethered to the limitations of claims 1, 18, 45, 47, and 48 (*id.* at pp. 34-35). In other words, by failing even to argue (much less convincingly demonstrate) that the allegedly corroborating documents evidence conception (in 1988) or reduction to practice (in 1996)—by corroborating each limitation in those claims—Escort implicitly acknowledges the absence of substantial evidence necessary to support the jury verdict invalidating them.

This defect in Escort's briefing is not surprising, nor could Escort argue otherwise since, as shown below, none of the 20 trial exhibits even indirectly evidences a single limitation in any of claims 1, 18, 45, 47, and 48.

|   | Trial Exhibit | Appendix Cite To Trial Exhibit | Appendix Cite To Orr's Direct Testimony | Appendix Cite To Orr's Cross Examination | Description |
|---|---|---|---|---|---|
| 1 | 2324 | A7757 | A6086 | A6149 | Single-page frequency plot of a radar signal dated 07-03-1992. |
| 2 | 2284 | A7434-93 | A6088 | A6149 | File folder containing various mostly undated magazine articles and undated signal frequency plots. The one dated magazine article is dated 1990 (A7448-50). |
| 3 | 2360 | A7795-6 | A6091 | A6150 | List of Escort Patents. |
| 4 | 2160 | A7284-7305 | A6091 | A6150 | U.S. Patent No. 5,305,007 issue April 19, 1994. |
| 5 | 2281 | A7351-55 | A6092 | A6150 | Various disjoint handwritten notes and emails from 1996 and 1997 admittedly showing no claim limitations. |
| 6 | 2334 | A7704-56 | A6100 | A6151 | Photographs of shipping boxes and contents thereof purchased between 2009-2011. |
| 7 | 2192 | A7344 | A6105 | A6152 | Excel file of raw GPS data admittedly showing no claim limitations. |
| 8 | 2232 | A7349 | A6108 | A6152 | Excel file of raw GPS data admittedly showing no claim limitations. |

| 9 | 2231 | A7348 | A6111 | A6152 | Excel file of raw GPS data admittedly showing no claim limitations. |
|----|------|-------|-------|-------|---------------------------|
| 10 | 2283 | A7362-7433 | A6113 | A6152 | File containing various product data sheets, website pages, data graphs, purchase order requests, and facsimiles. |
| 11 | 2173 | A7320 | A6113 | A6152 | Excel file of raw GPS data admittedly showing no claim limitations. |
| 12 | 2174 | A7321 | A6113 | A6152 | Excel file of raw GPS data admittedly showing no claim limitations. |
| 13 | 2211 | A7345 | A6115 | A6152 | Excel file of raw GPS data admittedly showing no claim limitations. |
| 14 | 2220 | A7346 | A6116 | A6152 | Excel file of raw GPS data admittedly showing no claim limitations. |
| 15 | 2230 | A7347 | A6116 | A6152 | GPS data, which was imported into an Excel spreadsheet, admittedly showing no claim limitations. |
| 16 | 2233 | A7350 | A6116 | A6152 | Excel file of raw GPS data admittedly showing no claim limitations. |
| 17 | 2282 | A7356-7361 | A6125 | A6153 | File folder of documents admittedly showing no claim limitations. |
| 18 | 2285 | A7494-518 | A6126 | A6153 | Steven Orr timesheets and Escort payment checks dated 1998. |
| 19 | 2286 | A7519-46 | A6127 | A6154 | Steven Orr timesheets and Escort payment checks dated 1999. |
| 20 | 2191 | A7322-7343 | A6128 | A6154 | Article entitled "How to Choose a GPS System to |

| | | | | | meet your needs" dated 1998. |

While the above list of documents/exhibits may appear daunting in volume, it actually takes little time to look at the documents and conclude they show nothing of substantive interest, much less any limitation of claims 1, 18, 45, 47, and 48 in the '038 patent, or any conception or reduction to practice of those claims. Indeed, although Escort's opposition brief cites each document, Escort (like the district court) conspicuously fails to (1) specifically discuss the content of any one of them, (2) identify any claim limitation in any document, (3) argue any specific content in the documents evidences/corroborates a single claim limitation, (4) or argue any of the documents (alone or collectively) evidences a conception or reduction to practice of claims 1, 18, 45, 47, and 48 in 1996.

The reason for Escort's conspicuous failure to specifically address any of the allegedly "corroborating" documents is they are entirely irrelevant. To the extent any of them are dated, none are dated during the critical time that Mr. Orr claims to have conceived Mr. Fleming's invention (1988). While the parties stipulated that a few of the documents are dated in 1996 when Mr. Orr claims to have reduced Mr. Fleming's invention to practice (A7344, A7349, A7348, A7320, A7321, A7345, A7346, A7350), Mr. Orr admitted that none of those documents show a single claim limitation, as is readily apparent from the documents themselves. The remainder of the documents are nothing more than a 1992 frequency plot (A7757),

a folder containing frequency plots and magazine articles (A7434-93), a list of patents (A7795-6), a patent issued in 1994 (A7284-7305), timesheets and checks made payable to Mr. Orr from 1998-1999 (A7494-546), photographs of shipping boxes from 2009-2011 (A7704-11), and a 1998 third-party technical article (A7322-7343).

Thus, the "corroborating" documents, at best, collectively corroborate only that Mr. Orr worked for Escort. In these circumstances, Escort did not simply neglect to identify any claim limitation in any of the documents, it simply could not be done. For example, Escort exclusively relies upon A7351-A7355 and A7757 for corroboration of the reduction to practice in 1996 of a "system" that generates "an alert if the radar detector is not within a predetermined distance of a predetermined position", *i.e.*, a radar detector that uses a lockout distance to lockout false alarms. (Opp. Br. at p. 34). The five pages of A7351-7355 do not corroborate the reduction to practice of anything. A7351 and 7352 merely list the names and phone numbers of various GPS vendors. A7353 discusses the results of a "brainstorming meeting". Brainstorming may be relevant to conception, but not reduction to practice. A7354 is an email that discusses "entering the ETAK business" and does not indicate that any radar detector that uses a lockout distance had been constructed. A7355, a document dated 1997, discusses SCTV and a "trademarks assignment", not the construction of any radar detector in 1996 that

uses a lockout distance to lockout false alarms.  Similarly, A7757, a frequency plot from 1992, does not corroborate reduction to practice of anything in 1996, much less a radar detector that uses a lockout distance to lockout false alarms.

In these circumstances is it not surprising the district court actually found the "corroborating" documents do not evidence the limitations of claims 1, 18, 45, 47, and 48.  (A46-47 ("Ultimately, the corroboration requirement is intended to determine credibility, and such evidence could establish the credibility of the purported inventor without establishing every element of every Claim.  That is the case here.").)  Accordingly, the district court erred concerning the sufficiency of the evidence because—as the court agreed and as the evidence irrefutably shows— there was no documentary evidence corroborating any (much less each) limitation of claims 1, 18, 45, 47, and 48 in the '038 patent, or that Mr. Orr conceived (in 1988) or reduced to practice (in 1996) the subject matter of those claims.

## C.     The District Court Also Erred As A Matter Of Law By Mixing The Tests For Anticipation And Obviousness

The district court erred as a matter of law for yet another reason.  When denying Mr. Fleming's renewed JMOL, the district court confused the test for invalidating a claim under 35 U.S.C. § 102 with that of invalidating a claim under 35 U.S.C. § 103.  Specifically, the district court denied Mr. Fleming's renewed JMOL for the following reason:

> Fleming argues that the corroboration evidence must corroborate every element of every Claim that Escort seeks to invalidate. Yet Fleming cites no case so holding. Fleming's promotion of a rigid standard does not align with the rule of reason and ignores *KSR's* holding that obviousness is to be judged by an 'expansive and flexible' standard. *KSR,* 550 U.S. at 415. Ultimately, the corroboration requirement is intended to determine credibility, and such evidence could establish the credibility of the purported inventor without establishing every element of every Claim. That is the case here.

(A46-47.)

The jury verdict with respect to '038 patent claims 18 and 45 concerns anticipation under 35 U.S.C. § 102, not obviousness under 35 U.S.C. § 103. (A7840.) Anticipation and obviousness employ different invalidity analyses and, as this Court previously held, it is error to mix the two when evaluating the validity of a claim under 35 U.S.C. § 102. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983). Thus, the district court erred as a matter of law when upholding the jury's anticipation finding (for '038 patent claim 18 and 45) using "*KSR's* holding that obviousness is to be judged by an 'expansive and flexible' standard". (A44.)

Escort's opposition brief only confusingly addresses this issue. Escort states in full:

> [T]he District Court did not apply KSR's holding regarding obviousness to the jury's determination regarding invalidity of the asserted claims, and did not "mix" obviousness with anticipation as suggest (sic) by Fleming. To the contrary, in the jury instructions and

in the section of the District Court's decision regarding invalidity, the District Court properly addressed those issues.

(Opp. Br. at p. 40.) Escort's explanation is, respectfully, indecipherable. Escort's references to (1) "the jury instructions", (2) "the section of the District Court's decision regarding invalidity", and (3) "the District Court properly address[ing] those issues" cite nothing, and it is impossible to tell from the context what Escort is referencing, much less arguing. Accordingly, Escort has no credible explanation for the district court's obvious legal error when it held that a patent claim can be invalidated as anticipated under 35 U.S.C. § 102 by applying the "expansive and flexible" standard set forth in *KSR* for determining obviousness under 35 U.S.C. § 103.

## II.  THE DISTRICT COURT ERRED WHEN HOLDING THAT CONCLUSORY TESTIMONY SUPPORTS THE INVALIDITY VERDICT

### A.  None Of Escort's Witnesses Identified Any Element Of Any Claim, How It Was Construed, Or How It Corresponds To The Prior Art

Mr. Fleming's opening brief explained that Escort's trial evidence regarding the invalidity of claims 1, 18, 45, 47, and 48 in the '038 patent was conclusory and, therefore, substantively and legally insufficient. (Opening Br. at pp. 19-30.) Mr. Fleming cited this Court's precedent describing the requisite trial testimony necessary to invalidate a patent claim:

Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the

witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory. *TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1372, 62 USPQ2d 1449, 1456 (Fed. Cir. 2002) ("Mere denials or conclusory statements are insufficient.")

*Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1315 (Fed. Cir. 2002); *see also, Ecolab, Inc. v. FMC Corp.,* 569 F.3d 1335, 1346 (Fed. Cir. 2009). (Opening Br. at p. 21.)

Mr. Fleming likewise cited this Court's precedent from *Fresenius USA, Inc. v. Baxter Int'l, Inc.* as holding:

> [E]ven if the [prior art] disclosed a [particular claim limitation] it was [defendant's] burden to clearly disclose, discuss, and identify for the jury the supporting evidence upon which it was relying to prove that the claim limitation was present in the prior art…Here, as with [another claim limitation] discussed above, the evidentiary burden of proof cannot be carried without clearly identifying the corresponding structure in the prior art. Thus, substantial evidence does not support the jury's implicit finding that the prior art contained [the claim limitation] and the district court correctly granted JMOL.

582 F.3d 1288, 1300 (Fed. Cir. 2009); *id.* at 1304 ("Because Fresenius failed to demonstrate that the structures corresponding to certain means-plus-function claim limitations were present in the prior art, we affirm the district court's judgment that Fresenius failed to prove that claims 26-31 of the '434 patent are invalid."). (Opening Br. at p. 21.)

Still further, Mr. Fleming's opening brief cited this Court's similar precedent in *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC,* as holding:

To establish anticipation, Koito was required to proved that the [prior art] reference met the limitations of the claims in the '268 patent. *Dayco Prods., Inc. v. Total Containment, Inc.,* 329 F.3d 1358, 1368 (Fed. Cir. 2003)…

At trial, Koito entered the [prior art] reference into evidence, but otherwise failed to provide any testimony or other evidence that would demonstrate to the jury how that reference met the limitations of the claim in the '268 patent or how the reference enabled one of ordinary skill in the art to practice the claimed invention. As Turn-Key points out, Koito did not even mention the [prior art] reference after introducing it into evidence. Instead, Koito's expert, Dr. David Kazmer, offered a conclusion of invalidity relating to a quintet of prior art patents which included the [prior art] reference. Specifically, Dr. Kazmer testified that:

> All these prior art patents provide for products and ways of making products with thick and thin sections. The gate locations are shown, and they all have inherently crossing flows in sections of the product, sometimes substantial sections of these products, such that they all would have a cross-laminated section as Turn Key is applying that term in the accused lenses.

We have consistently explained what is necessary to show anticipation by a given reference:

Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory.

*Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1315-16 (Fed. Cir. 2002). General and conclusory testimony, such as that provided by Dr. Kazmer in this case, does not suffice as substantial evidence of invalidity. *See, e.g. id* (stating that "to accept confusing or generalized testimony as evidence of invalidity is improper").

381 F.3d 1142, 1151-52 (Fed. Cir. 2004) (vacating district court's denial of JMOL on validity).  (Opening Br. at pp. 22-23.)

Despite these citations in Mr. Fleming's opening brief, the Court will find no mention of—much less an effort to distinguish—them in Escort's opposition brief. (Opp. Br. at pp. 41-54.)  Nor, despite Mr. Fleming citing each case in his renewed JMOL, will the Court find any mention of them in the district court's decision denying that JMOL.  (A42-45.)  Both Escort and the district court simply ignore the cases and their mandate.

The district court, instead, rationalized its decision by relying on *KSR's* "expansive and flexible approach" to combining prior art references for an obviousness analysis as an apparent substitute for this Court's precedent set forth in Mr. Fleming's cited cases*, i.e.,* precedent prohibiting conclusory testimony and requiring testimony from one skilled in the art that identifies each claim element, states the witnesses' interpretation of the claim element, and explains in detail how each claim element is disclosed in the prior art reference.  (A44.)  As Mr. Fleming's opening brief explains—and Escort's opposition brief conspicuously does not challenge—the district court's analysis errs as a matter of law.  (Opening Br. at pp. 28-30.)

As an initial matter, claims 18 and 45 were invalidated as anticipated (under 35 U.S.C. § 102) in view of Orr's alleged prior invention (A7840), thereby

rendering the district court's rationale for denying Mr. Fleming's renewed JMOL—based on an obviousness analysis (under 35 U.S.C. § 103 and *KSR*)— entirely improper. (*See* Opening Br. at pp. 28-29.) Second, as for the claims that were invalidated as obvious, this Court has never held that the "expansive and flexible approach" set forth in *KSR* (for combining prior art references) operates— as the district court ruled—to supplant this Court's precedent prohibiting conclusory testimony and requiring testimony from one skilled in the art that identifies each claim element, states the witnesses' interpretation of the claim element, and explains in detail how each claim element is disclosed in the prior art reference. The two concepts are, respectfully, apples and oranges, and yet the district court improperly interchanged them, and Escort's opposition brief conspicuously fails even to address the issue.

Escort's alternate opposition arguments are, respectfully, as faulty as the district court's, but for a different reason. As an initial matter, Escort impermissibly seeks to re-litigate the issue as opposed to having this Court review the district court's decision. Specifically, the district court concluded (based on an error of law described above) that the trial evidence was not impermissibly conclusory based on 8 pages of Mr. Orr's trial testimony. (A44, citing Trial Tr. (Dkt. No. 322) at 120-27; A6197:120:1-A6198:127:25.) Mr. Fleming's opening brief distinguished those 8 pages of testimony and the district court's reliance on

them.  (Opening Br. at pp. 24-27.)  Nevertheless, Escort's opposition—realizing the district court's decision cannot be supported as written—cites numerous *other* pages of Mr. Orr's testimony as alleged support for the district court's decision. Since Escort's other citations are not part of the district court's decision, this Court should not pass on them as a matter of first impression.  It is this Court's function to review district court decisions, not serve as a substitute for the district court in evaluating all the evidence anew.  *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1426 (Fed. Cir. 1997); *Brunswick Corp. v. British Seagull Ltd.,* 35 F.3d 1527, 1530 (Fed. Cir. 1994).

The matter is academic in any event because none of Escort's new citations (*i.e.,* those not relied on by the district court) shows any witness identifying each limitation in claims 1, 18, 45, 47, and 48, providing an interpretation of each limitation, or explaining (much less in any detail) how or where each limitation is disclosed in each applicable prior art reference.  *Schumer,* 308 F.3d at 1315-16 (Fed. Cir. 2002); *Ecolab,* 569 F.3d at 1346 (Fed. Cir. 2009); *Fresenius*, 582 F.3d at 1300, 1304 (Fed. Cir. 2009); *Koito,* 381 F.3d at 1151-52 (Fed. Cir. 2004).  Escort saying otherwise does not change things.  The Court need only look at the trial evidence to see (as shown in more detail below) that Escort is wrong.

In Dr. Grindon's case, his testimony (all 78 minutes of it) shows he never identified any limitation in any of claims 1, 18, 45, 47, and 48, he never provided

any interpretation of any claim limitation, and he never explained (much less in any detail) how or where each claim limitation is disclosed in any prior art reference. This cannot be disputed. The following are complete citations to Dr. Grindon's trial testimony, each of which shows Dr. Grindon did nothing this Court requires to sustain a jury's invalidity finding:

| Prior Art Reference(s) | Claims | Grindon Testimony |
| --- | --- | --- |
| Alleged Orr Prior Invention | 18 and 45 of '038 patent; | A6325:50:3-A6327:58:12 |
| Alleged Orr Prior Invention and Hoffberg | 1 and 18 of '038 patent | A6327:58:13-A6330:70:20 |
| Alleged Orr Prior Invention and Ross | 18 of '038 patent | A6330:70:21-A6331:73:22 |
| Alleged Orr Prior Invention and Valentine | 47 and 48 of '038 patent | A6332:78:4-A6333:82:1 |

As shown by the above-cited transcript pages, with regard to the alleged Orr prior invention, Dr. Grindon never even referred to a single prior art (or otherwise) document. (A6325:50:3-A6327:58:12.) As for the other prior art references (Hoffberg, Ross, and Valentine), Dr. Grindon simply introduced the reference, in a few instances looked at a few lines highlighted by counsel, and waived his hands concluding that claims 1, 18, 45, 47, and 48 were invalid in view of the reference(s). (A6327:58:13-A6330:70:20; A6330:70:21-A6331:73:22; A6332:78:4-A6333:82:1.)

As the trial transcript also shows, it also cannot be disputed that Dr. Grindon never identified any claim element, never stated his (or any) interpretation of any claim element, and never explained (much less in any detail) how each claim element is disclosed in any prior art reference, as this Court's precedent requires. *Schumer,* 308 F.3d at 1315-16 (Fed. Cir. 2002); *Ecolab,* 569 F.3d at 1346 (Fed. Cir. 2009); *Fresenius*, 582 F.3d at 1300, 1304 (Fed. Cir. 2009); *Koito,* 381 F.3d at 1151-52 (Fed. Cir. 2004).

Mr. Orr's testimony was worse. While Mr. Orr generically testified about what he contends he invented, none of his testimony addressed all the limitations of claims 1, 18, 45, 47, and 48, nor was his testimony corroborated by any documentary evidence showing any of those limitations. (*Supra* at pp. 8-16; Opening Br. at pp. 13-18.) The district court agreed. (A46-47 ("Ultimately, the corroboration requirement is intended to determine credibility and such evidence could establish the credibility of the purported inventor without establishing every element of every Claim. That is the case here.")

As pointed out in Mr. Fleming's opening brief and conspicuously not mentioned (much less challenged) by Escort's opposition, Mr. Orr also admitted he was unqualified to testify about patent claims, their interpretation, or how they may or may not apply to the prior art, including his alleged prior invention. (A6171:291:10-A6172:293:19.) The district court agreed with this as well, ruling

that "Orr did testify that he had no expertise in interpreting patent claims". (A44.) With this acknowledgment, it cannot be disputed that neither of the only two witnesses Escort and the district court rely on (Mr. Orr and Dr. Grindon) ever testified how they were construing the claims when performing their supposed invalidity analyses.

Despite all of this, Escort's opposition brief argues that Mr. Orr's trial testimony meets the standard set by this Court for invalidating a patent claim. The utter and total inaccuracy of Escort's argument is best proven by reference to the trial transcript citations in Escort's opposition brief. (Opp. Br. at pp. 41-53.) While it is not Mr. Fleming's intention to force this Court to the laborious chore of reading each citation (including those the district court did not even rely on), Mr. Fleming is not aware of a better (or faster) way of demonstrating that Mr. Orr never identified any pertinent claim element,[7] never stated any interpretation of any claim element, and never explained (much less in any detail) how each claim element is disclosed in any prior art reference, as this Court's precedent requires. *Schumer*, 308 F.3d at 1315-16 (Fed. Cir. 2002); *Ecolab*, 569 F.3d at 1346 (Fed.

---

[7] Mr. Fleming's opening brief explained—and Escort's opposition brief does not dispute—that, contrary to the district court's holding, Mr. Orr's cited testimony shows he never testified about the following limitations in the following claims of the '038 patent: claim 1, steps (a), (b), and (c); claim 18, elements (a), (b), and (c); claim 45, elements (a) and (b); claim 47 calling for a "microprocessor…"; and claim 48 calling for a "microprocessor….". (Opening Br. at p. 27, citing A58-A60; A6197:120:1-A6198:127:25.)

Cir. 2009); *Fresenius*, 582 F.3d at 1300, 1304 (Fed. Cir. 2009); *Koito*, 381 F.3d at 1151-52 (Fed. Cir. 2004). While Escort would have this Court believe otherwise, saying so does not make it true, as shown by Escort's transcript citations.

Accordingly, as shown, the district court (1) erred as a matter of law by ignoring this Court's precedent against allowing conclusory tesimony to support a jury verdict and (2) erred in concluding that such conclusory testimony is substantial evidence sufficient to sustain the jury's invalidity verdict for claims 1, 18, 45, 47, and 48 in the '038 patent.

### B. Escort Does Not Substantively Challenge The Remainder Of This Portion Of Mr. Fleming's Appeal

Escort conspicuously does not substantively challenge the remainder of this portion of Mr. Fleming's appeal. Specifically, Mr. Fleming's opening brief also pointed out that:

> Mr. Orr's cited testimony shows he never testified about the following limitations in the following claims of the '038 patent: claim 1, steps (a), (b), and (c); claim 18, elements (a), (b), and (c); claim 45, elements (a) and (b); claim 47 calling for a "microprocessor…"; and claim 48 calling for a "microprocessor….".[8] (A58-A60; A6197:120:1-A6198:127:25.) Thus, even if this Court were to determine that Mr. Orr's testimony was not impermissibly conclusory, the district court's ruling still must be reversed because that testimony (the only testimony the district court relies on) does not even address the elements of the disputed claims, as it must to invalidate them.

---

[8] Claims 47 and 48 both depend from claim 45. (A60:10:36-42.) Thus, not only did Mr. Orr's testimony not disclose the subject matter of claims 47 and 48, but it also did not disclose the subject matter of those claims because his testimony did not disclose the subject matter of independent claim 45.

*Lacks Indus.,* 322 F.3d at 1348-51; *Juicy Whip,* 292 F.3d at 737-43; *In re NTP,* 654 F.3d at 1291-94.

(Opening Br. at pp. 27-28.)  Escort's failure to address this aspect of Mr. Fleming's appeal shows it cannot be challenged and that Escort concedes the district court erred accordingly.

Mr. Fleming's opening brief also pointed out that:

[T]he jury verdict with respect to claims 18 and 45 in the '038 patent concerns anticipation under 35 U.S.C. § 102, not obviousness under 35 U.S.C. § 103.  (A7840.)  Anticipation and obviousness employ different invalidity analyses and, as this Court previously held, it is error to mix the two when evaluating the validity of a claim under 35 U.S.C. § 102.  *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1548 (Fed. Cir. 1983).  Thus, the district court erred as a matter of law when upholding the jury's anticipation finding (for '038 patent claim 18 and 45) using the "expansive and flexible approach" set forth in *KSR* for determining obviousness.

(Opening Br. at pp. 28-29.)  Escort's failure to address this aspect of Mr. Fleming's appeal shows it cannot be challenged and that Escort concedes the district court erred accordingly.

Finally, Mr. Fleming's opening brief also pointed out the following:

[T]he district court's seeming reliance on the "easily understandable" nature of this case is incorrect and inconsistent with its other rulings. Even Escort must agree since it argued for a 60/40 split in the parties' trial time on the basis that "Escort disclosed 12 witnesses, many of whom have extensive and very technical testimony, and 371 exhibits, many of which are quite lengthy and contain highly technical subject matter." (A3939-4.)  Not only did the district court agree with Escort (ordering a 55/45 split in trial time in Escort's favor), it upheld the jury verdict in another part of its post-trial order on the basis that Escort did not abandon or suppress its alleged prior invention because

"[t]he subject matter was [so] complex" that it was reasonable that it took Mr. Orr 11 years before it was sufficiently "refined" to file a patent application. (A42.)

Mr. Fleming respectfully submits the district court cannot have it both ways on the same issue. In other words, if the district court contends the technology in the case was so easily understood that the jury could have decided the obviousness issue based only on Mr. Orr's conclusory, non-substantive testimony and without the aid of expert testimony, it cannot simultaneously contend that Mr. Orr did not suppress or conceal his alleged invention because it was so complex that it reasonably took him 11 years to refine it. (*Compare* A45 and A42.) .

(Opening Br. at pp. 29-30.) Escort's failure to address any of these aspects of Mr. Fleming's appeal shows none of them can be challenged and that Escort concedes the district court's rationale for sustaining the jury's invalidity verdict (based on Mr. Orr's and Dr. Grindon's conclusory testimony) cannot be logically or legally reconciled.

## III. THE DISTRICT COURT ERRED IN FINDING THE ORR PRIOR INVENTION HAD NOT BEEN SUPPRESSED OR CONCEALED

Escort fails to substantively rebut Mr. Fleming's opening brief (regarding the impermissible suppression/concealment of the alleged Orr prior invention) for two primary reasons. First, Escort fails to reconcile the district court's decision with the trial evidence and applicable law. Second, in creating an excuse different from the one the district court relied on (*i.e.,* that Mr. Orr suppressed/concealed because his employer went bankrupt), Escort unwittingly acknowledges that Mr. Orr impermissibly suppressed/concealed his alleged invention.

## A. The District Court's Decision Cannot Be Reconciled With The Evidence

The dispositive facts are not disputed. Mr. Orr claims to have conceived his alleged invention in 1988 (A6161:250:1-251:11); he claims to have reduced it to practice in 1996 (*id.*); he first filed a patent application on it in 1999 (*id.*); and, Escort claims to have first commercialized it in 2007 (A6113:56:18-57:3; A6132:132:1-10; A7079). When Mr. Orr was asked at trial why he waited until 1999 to file his patent application (many years after he claims to have conceived and reduced it to practice), he unequivocally stated "I don't know why -- Escort does what they do." (A6162:253:24-254:9.)

Despite these undisputed facts, when denying Mr. Fleming's renewed JMOL on the issue, the district court held that "Escort has carried its burden of proof [by clear and convincing evidence] on this issue"*, i.e.,* that Mr. Orr did not impermissibly abandon/suppress his invention prior to filing his patent application. (A40.) The district court further held that the reason Mr. Orr did not file his patent application until 1999 was because the technology was "complex" and he was "refining" it that whole time. (A40-42.) According to the district court, that exempted Mr. Orr from the suppression/concealment bar of 35 U.S.C. § 102(g). (*Id.*)

The district court cited no evidence for its decision. (A40-42.) Thus, neither the evidentiary basis for the court's conclusion, nor the sufficiency of that

evidence, can be addressed or determined. The district court also ignored Mr. Fleming's citation to this Court's precedent, holding that an alleged prior art holder's failure to provide a reasonable explanation for its suppression or concealment requires a finding of suppression or concealment. *Apotex U.S.A., Inc. v. Merck & Co.,* 254 F.3d 1031, 1038 (Fed. Cir. 2001), citing *Shindelar v. Holdeman*, 628 F.2d 1337, 1342 (CCPA 1980) (finding suppression or concealment because no reasonable explanation was given for the two-year and five-month delay between reduction to practice and the filing of a patent application).

The district court's ruling also was inconsistent. While the court reasoned that Mr. Orr's self-professed and otherwise unexplained suppression/concealment actually was due to his "refining" of the "complex" technology, the court simultaneously held the technology was easily understandable and boiled down to a question of common sense when it exempted Escort from providing expert testimony (on the issue of obviousness) as the basis for denying another one of Mr. Fleming's JMOLs. (A44-45.)

Last, the district court's decision also was arbitrary. Mr. Orr testified that he worked on his alleged invention (after supposedly conceiving it in 1988 and reducing it to practice in 1996) until 2007, when a commercial product was finally realized. (A6113:56:18-57:3; A6132:132:1-10; A7079.) Thus, under the district

court's rationale, Mr. Orr could have suppressed/concealed his alleged invention for up to 19 years (if counting from conception) or 11 years (if counting from reduction to practice) so long as he was "refining" it. Mr. Fleming is aware of no precedent supporting that proposition. *See Fujikawa v. Wattanasin,* 93 F.3d 1559, 1567-69 (Fed. Cir. 1996) (allowing 17-month delay from reduction to practice where inventor was engaged in steps toward perfecting his invention).

There also is no evidence that Mr. Orr's alleged "refining" had reached a status by 1999 (when he filed his patent application) that enabled Orr/Escort to then be able to file that application, as opposed to before or after that time. In other words, the district court's finding that Mr. Orr's "refining" became sufficient for him to file a patent application in 1999 not only is not supported by any evidence, but it appears to have been arbitrarily selected to coincide with when he filed his application.

Mr. Fleming pointed out all of these issues in his opening brief (pp. 37-40), and yet Escort's opposition conspicuously fails even to address, much less substantively rebut, any of them.

## B. Escort's Opposition Brief Unwittingly Concedes Escort/Orr Abandoned/Suppressed And That The District Court Erred

Escort's opposition brief unwitting concedes Escort abandoned/suppressed the alleged Orr prior invention, and that the district court erred both as a matter of law and on the sufficiency of the evidence.

Specifically, none of the evidence Escort's opposition cites indicates—as the district court held—that: (1) Mr. Orr "diligently refined" his invention between 1996 (when he claims to have reduced it to practice) and 1999 (when he first filed a patent application); or (2) Mr. Orr's alleged work had reached a sufficiently "refined" status by 1999 that enabled Escort to file a patent application, as opposed to before or after that time.

The evidence shows that Escort's predecessor (Cincinnati Microwave, where Mr. Orr supposedly made his alleged invention) went into financial distress in 1996 and filed for bankruptcy in 1997. (A6122:95:14-A6124:102:10; A6118:77:16-20; A6179:51:14-A6182:61:25; A6288:211:22-6289:215:8.) During and after that timeframe, Mr. Orr ceased all activities related to his alleged invention and took a different job developing cordless phone technology, while also working with a bankruptcy trustee to distribute Cincinnati Microwave's assets. (*Id*.)

In 1997, Escort purchased some of Cincinnati Microwave's assets, including the allege work Mr. Orr had previously done. (*Id*.) Although Escort tried to lure Mr. Orr away from his work with the trustee and his cordless phone work, Mr. Orr refused until he finally began consulting for Escort in 1998. (*Id*.) Mr. Orr concedes his first task at Escort was to get a product on the market (the "PRO" model), which admittedly had nothing to do with his alleged prior invention. (*Id*.)

It was not until 1999 that Orr claims he re-started his prior invention work and ultimately filed a patent application in May of that year. Moreover, it was not until eight years later (in 2007) when Orr had finally "refined" his alleged invention enough to include it in a product. (*Id.*)

Listed below is each citation from Escort's opposition brief, which the Court will find unequivocally supports the above fact pattern, not Escort's (and the district court's) claim that Mr. Orr "diligently refined" his invention from the time he allegedly reduced it to practice in 1996 until the time he filed a patent application in 1999. (The cites are listed in the order Escort's opposition makes them.)

| **ESCORT CITE** | **TRIAL TESTIMONY** |
|---|---|
| A6094:276:5-18 (Opp. Br., p. 55; 56) | Orr allegedly told to "drop everything" and work on his alleged invention on April 3, 1996. |
| A6183:64:8-66:12 (Opp. Br., p. 56) | Orr ceased work on his alleged invention in 1996 and spent the next two years collecting Escort's predecessor's (Cincinnati Microwave's) assets and transitioning them to Escort. Orr does not start working as a consultant for Escort until mid 1998, and only some time after that was he asked to restart his GPS conceptual work. |
| A6185:75:15-A6186:77:22; A6187:88:7-A6189:89:8 (Opp. Br., p. 56) | Orr does nothing to "refine" his alleged invention between 1996 and 1999 because "you have to wait for technology to catch up and give you the tools to actually create it". |
| A6102:13:19-A6103:16:21 (Opp. Br., p. 56) | Discussion limited to Orr's alleged work in April 1996. |

| A6118:76:2-77:12 (Opp. Br., p. 56) | Discussion regarding Orr's May 7, 1996 request for a new laptop computer so he could continue his studies, which Cincinnati Microwave rejected/denied due to its impending bankruptcy. |
| --- | --- |
| A6095:280:1-282:14 (Opp. Br., p. 56) | Orr states the U.S. government increased the accuracy of GPS signals in 2000, the year *after* Orr filed his patent application. |
| A6118:77:13-23 (Opp. Br., p. 56) | Orr's May 7, 1996 request for a new laptop computer (so he could continue his studies) was rejected/denied due to Cincinnati Microwave's impending bankruptcy. |
| A6122:95:14-A6123:97:21; A6181:59:15-A6182:60-7; A6123:96:5-97:14 (Opp. Br., pp. 56-57) | Cincinnati Microwave formally declared bankruptcy in 1997. Orr ceased all work on his alleged invention and spent the next year trying to sell Cincinnati Microwave's assets to potential investors. |
| A6123:98:1-8; A6123:98:5-99:16; A6123:96:5-A6124:100:13; A6127:113:4-10 (Opp. Br., p. 57) | Orr did nothing to "refine" his alleged invention between 1996-1998 because Cincinnati Microwave went bankrupt, he was in charge of selling its remaining assets, and he went to work in the cordless phone business for 13 months before being hired by Escort in 1998. |
| A6289:214:11-A6290:216:22; A6123:98:22-99:10 (Opp. Br., p. 57) | Orr worked for the bankruptcy court in transferring Cincinnati Microwave's assets to purchasers thereof. As part of those duties, Orr worked with John Kuhn (an Escort employee) regarding the assets Kuhn/Escort was buying out of Cincinnati Microwave's bankruptcy estate. |
| A6123:99:24-A6124:100:13; A6183:65 (Opp. Br., p. 58) | Orr first started working for Escort in the summer of 1998, after which he allegedly re-started his prior GPS efforts. |
| A7494-A7518; A7519-A7546 (Opp. Br., p. 58) | Orr timesheets showing he started working for Escort on July 8, 1998. |

| A6126:110:24-<br>A6128:117:23 (Opp. Br., p. 58) | Orr's first priority upon beginning work for Escort was getting a product to market (the "PRO model"), which did not include his alleged prior invention. |
| A6113:56:18-57:3;<br>A6122:92:11-95:12;<br>A6132:133:13-A6133:136:1 (Opp. Br., p. 58) | Orr claims to have worked from April 1996 until he had refined his alleged invention into a product in 2005 or 2006. |

As shown, contrary to the district court's unsubstantiated conclusion, all the trial evidence irrefutably shows there was no "refining" (much less "diligent refining") of Mr. Orr's alleged invention between 1996 (when he claims to have reduced it to practice) and 1999 (when he first filed a patent application). Instead, as shown, Mr. Orr's employer (Cincinnati Microwave) went bankrupt, and his alleged invention sat "secreted" (as Mr. Orr admits) in the files of the bankrupt company for years until Mr. Orr picked it back up and immediately filed a patent application in June 1999, months after Mr. Fleming had filed his application in April 1999.

Accordingly, the district court erred for two independent reasons. First, the district court erred on the sufficiency of the evidence because there was there no evidence that Mr. Orr was "diligently refining" his alleged invention between 1996 and 1999, much less substantial evidence that he had sufficiently refined it contemporaneously with when he filed a patent application. Second, the district court erred as a matter of law in creating a "bankruptcy" exception to the

suppression/concealment bar of 35 U.S.C. § 102(g), which this Court has never recognized. *See e.g., Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1306-7 (Fed. Cir. 2012) ("A principal purpose of § 102(g) is to ensure that a patent is awarded to a first inventor. However, it also encourages prompt public disclosure of an invention by penalizing the unexcused delay or failure of a first inventor to share the benefit of the knowledge of the invention with the public after the invention has been completed.")

## IV. FLEMING'S RESPONSE TO ESCORT'S CROSS APPEAL

Escort's cross appeal seeks reversal of the district court's findings of fact and its corresponding conclusion of law that Escort failed to prove by clear and convincing evidence that the reissue claims in Mr. Fleming's '038 and '653 patents are invalid. In doing so, Escort raises only harmless error, while also misstating the appellate standard of review, misstating the district court's decision, misstating the trial evidence, misstating the controlling law, and even misstating the appellate subject matter in terms of which patent claims are subject to the district court's ruling. In short, Escort does nothing to warrant reversal of the district court's decision.

### A. Escort Misstates The Appellate Subject Matter

Escort requests that this Court "mandate that the District Court enter a verdict of invalidity of the '038 and '653 patents as failing to comply with the

patent reissue statute". (Opp. Br. at p. 66.) Escort's request overreaches (thereby misstating the appellate subject matter) since each claim in those two patents was *not* the subject of the parties' trial, much less the district court's decision.

Specifically, while both the '038 and '653 patents are "reissue" patents, claims 1-10 in the '038 patent are original—not reissue—claims. In other words, those claims were identically present in Mr. Fleming's original '798 patent and, as a consequence, those ten claims carried over as "original" claims 1-10 in the '038 patent. The '038 patent confirms this by using non-italicized font when printing claims 1-10. (A53-61 at col. 1, lns. 5-8 ("matter printed in italics indicates the additions made by reissue").) (*See also,* A5674:92:21-94:13.)

This Court's precedent establishes that "original" claims in a reissue patent will not be invalidated even if it is decided later that all the new (*i.e.,* non-original or reissue) claims in the reissue patent were improperly reissued. 35 U.S.C. 252 at ¶ 1; *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 882 F.2d 1556, 1566-67 (Fed. Cir. 1989) (original claims unaffected even where reissue claims were invalid due to improper reissue). Thus, Escort's request that the entirety of the '038 patent be invalidated on appeal violates this Court's precedent at least to the extent Escort's request relates to claims 1-10 in that patent.

Escort's request overreaches for yet another reason, thereby again misstating the appellate subject matter. Despite Escort's request that the entirety of the '038

and '653 patents be invalidated, many of the claims in those patents were not even the subject of the parties' trial or (therefore) the district court's decision upholding (under 35 U.S.C. § 251) the validity of all the patent claims that were actually tried. Specifically, claims 2, 4, 8-17, 19-24, 29-44, 46, and 49-50 in the '038 patent were not tried, nor were claims 23, 25-29, 34-37, 39-40, and 42-51 in the '653 patent. (A7834-7844; A58-61; A67-69.) Thus, contrary to Escort's demand, none of those claims (in addition to claims 1-10 in the '038 patent) are, or can be, part of the subject matter of this appeal.

## B. Escort's Cross Appeal Is Irrelevant/Moot Because It Raises Only Harmless Error

The Court need not even entertain Escort's cross appeal because it raises only harmless error and is, therefore, irrelevant/moot.

As described above, claims 1-10 in Mr. Fleming's '038 patent are "original" claims, *i.e.,* they are not "reissue" claims that could even conceivably be invalidated no matter how this Court rules on Escort's cross appeal. *Hewlett-Packard,* 882 F.2d at 1566-67 (Fed. Cir. 1989). Because the jury found that every one of Escort's accused products infringes at least one of those original claims— claim 7 (A7835; A7838)—and also found claim 7 not invalid (A7840-44), this Court's ruling on Escort's cross appeal can have no affect on Escort's liability for its infringement. *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566, n. 8 (Fed. Cir. 1996) ("Infringement of one valid and enforceable patent

claim is all that is required for liability to arise.") *citing e.g., Panduit Corp. v. Dennison Mfg. Co.,* 836 F.2d 1329, 1330 n. 1 (Fed. Cir. 1987) ("one is liable for patent infringement if one claim be infringed").[9]

Where an appeal can have no affect on a party's liability, any error raised by that appeal is necessarily harmless. *Serrano v. Telular Corp.,* 111 F.3d 1578, 1584 (Fed. Cir. 1997) ("Because the district court's error did not affect the correctness of its decision, which is that Serrano is liable for infringement, that error was harmless.") Since that irrefutably is the case here, the Court need go no further, and Escort's cross appeal should be summarily dismissed as irrelevant and moot.

### C.    Escort Misstates The Appellate Standard Of Review

Escort also misstates the standard of review for its cross appeal. Escort argues the district court's factual and legal findings—upholding the validity of the

---

[9] Escort argued to the district court that two cases show its cross appeal may change the outcome of this case: *Verizon Servs. Corp. v. Vonage Holding Corp.,* 503 F.3d 1295, 1310 (Fed. Cir. 2007) and *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282 (Fed. Cir. 2005). Neither case supports Escort's argument since both involved multiple patents asserted against different products, such that there was no infringed patent claim asserted against all the accused products. In such cases it makes sense that a damage award that does not distinguish between infringed claims and accused products would need to be revisited if some of the infringement/validity findings were reversed. That is not the case here since the jury found claim 7 was not invalid and *every* accused product infringed at least that claim. (A7835; A7838; A7840-44.) Nor was there any evidence that the damage award should/would be any different depending on which claim(s) were infringed, as Escort conspicuously fails to point out.

'038 and '653 patents under 35 U.S.C. § 251—presents this Court with "a question of law, which [it] review[s] *de novo*." (Opp. Br. at pp. 59-60.) That is incorrect.

The parties agreed to let the district court find the facts and decide whether the Patent Office had properly reissued certain claims (identified above) in Mr. Fleming's '038 and '653 patents. (A25-28.) The district court did that and issued its ruling, which reported its assessment of the credibility of witnesses, found the dispositive facts, and—based on those underlying credibility and factual findings—held as a matter of law that Escort had failed to prove by clear and convincing evidence that any of the pertinent patent claims were invalid under 35 U.S.C. § 251. (*Id*.) *See Hester Indus., Inc. v. Stein, Inc.,* 142 F.3d 1472, 1479 (Fed. Cir. 1998) (stating that whether the statutory requirements of 35 U.S.C. § 251 have been met is a question of law involving underlying issues of fact), citing *In re Clement,* 131 F.3d 1464, 1468 (Fed. Cir. 1997).

In cases like this one involving mixed issues of fact and law, this Court separates the district court's findings of fact and conclusions of law for separate appellate review under separate/different standards. The district court's legal conclusion is reviewed under the *de novo* standard, whereas the district court's factual findings are reviewed under the more deferential clearly erroneous standard. *See Ferag AG v. Quipp, Inc.,* 45 F.3d 1562, 1566 (Fed. Cir. 1995) (citation omitted).

The *de novo* standard is straightforward, but the clearly erroneous standard warrants further discussion due to the type of evidence (both oral and documentary) advanced in this case. The Supreme Court has defined the clearly erroneous standard as follows:

> A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed…. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74 (1985) (citations omitted); *see also Miles Labs., Inc. v. Shandon, Inc.,* 997 F.2d 870, 874 (Fed. Cir. 1993) (when the district court chooses one of two permissible views of the evidence, the choice between them cannot be clearly erroneous).

Under the clear error standard, the appellate court does not ask whether the findings were correct; it asks whether they were clearly wrong. This is a very lenient standard of review. For example, the Seventh Circuit informed one appellant that, for the trial courts' decision to be overturned as clearly erroneous, the decision "must strike us as more than just maybe or probably wrong; it must…strike us as wrong with the force of a five-week-old, unrefrigerated dead fish". *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir. 1988).

Finally, there are levels of review even within the clear error standard itself. The Supreme Court has ordered that greater deference be given under the clearly erroneous standard when—as in this case—the district court's findings are based upon the credibility of witnesses. *Anderson,* 470 U.S. at 573; *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 500 (1984); *see also, Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,* 732 F.2d 903, 905 (Fed. Cir. 1984). For example, in *Anderson* the Supreme Court stated:

> When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings…<u>When a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.</u>

470 U.S. at 575 (emphasis added); *see also, Hambsch v. Dep't of the Treasury,* 796 F.2d 430, 436 (Fed. Cir. 1986) (stating that "<u>[t]o the extent that the petitioner's claim is based on a challenge to the presiding official's credibility determinations, we reiterate our previous holdings that these determinations are virtually unreviewable</u>") (emphasis added).

### D.     Escort Incorrectly Describes The Law

Despite 35 U.S.C. § 251 being the only operative statute at issue in Escort's cross appeal, this Court will find no legal section in Escort's opposition brief explaining how this Court has interpreted and applied that statute. (Opp. Br. at pp.

60-65.)  Escort's attempt to merely "mix in" a few cases as it spins the facts fails to

accurately apprise the Court of the applicable legal precedent.

The pertinent portion of 35 U.S.C. § 251 states:

> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid…. by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent….

In *Medtronic,* this Court provided the following instructive summary of § 251:

> In considering the 'error' requirement [of § 251], we keep in mind that the reissue statute is 'based on fundamental principles of equity and fairness, and should be construed liberally.' *Hester Indus., Inc. v. Stein, Inc.,* 142 F.3d 1472, 1479 (Fed. Cir. 1998) (citation omitted). We have stated that '[a]n attorney's failure to appreciate the full scope of the invention is one of the most common sources of defects in patents,' and is generally sufficient to justify reissuing a patent. *In re Wilder,* 736 F.2d 1516, 1519 (Fed. Cir. 1984); *see also Hester,* 142 F.3d at 1479-80; *In re Clement,* 131 F.3d 1464, 1468 (Fed. Cir. 1997); *Mentor Corp. v. Coloplast, Inc.,* 998 F.2d 992, 995 (Fed. Cir. 1993); *Scripps Clinic & Res. Found. v. Genentech, Inc.,* 927 F.2d 1565, 1575 (Fed. Cir. 1991). It is not necessary that the error be unavoidable or that the error could not have been discovered by the patentee through proper communication with the prosecuting attorney. *Wilder,* 736 F.2d 1519.
>
> Reissue proceedings, however, cannot be used to obtain subject matter that could not have been included in the original patent. Under the 'recapture' rule, the deliberate surrender of a claim to certain subject matter during the original prosecution of the application for a patent 'made in an effort to overcome a prior art rejection' is not such 'error' as will allow the patentee to recapture that subject matter in a reissue. *Clement,* 131 F.3d at 1468-69. Thus, the recapture rule prevents a patentee from regaining, through reissue, subject matter that was surrendered during prosecution of the original patent in an effort to

obtain allowance of the original claims. *Pannu v. Storz Inst., Inc.,* 258 F.3d 1366, 1371 (Fed. Cir. 2001); *see also Hester,* 142 F.3d at 1479-80 ("[A] surrender is not the type of correctable 'error' contemplated by the reissue statute.").

465 F.3d 1360, 1372-1373 (Fed. Cir. 2006).  As the Court stated, and exactly as happened with Mr. Fleming (as he testified at trial, *infra* at pp. 47-49), the most common correctable error under § 251 is when the inventor fails to fully appreciate the scope of his invention during prosecution of his original patent.  The Court reiterated this principle in another case:

> M3 Systems states that since the needles were not claimed originally they were not "intended" to be claimed, and that absence of such intent is not an error correctable by reissue.  That too is an incorrect statement of the law.  An inventor's failure to appreciate the scope of an invention at the time of the original patent grant, and thus an initial intent not to claim the omitted subject matter, is a remediable error. *See In re Amos,* 953 F.2d 613, 619, 21 USPQ2d 1271, 1276 (Fed. Cir. 1991) (reissue application not subject to rejection for failure to demonstrate initial intent to claim, when subject matter of reissue claims satisfies § 112 requirements); *In re Weiler,* 790 F.2d 1576, 1581, 229 USPQ 673, 676-77 (Fed. Cir. 1986) ("intent to claim" is shorthand for a means of measuring whether required error is present).

*C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1354 (Fed. Cir. 1998).

In keeping with its admonishment that the "error" requirement of § 251 is to be "construed liberally", this Court has further held that only "deliberate" actions may not qualify as errors under § 251.  *In re Serekin* explains that "deliberate" actions are those in which a conscious choice is made between two presently known options.  479 F.3d 1359, 1362-1363 (Fed. Cir. 2007).  *See also, In Re*

*Dinsmore,* No. 2013-1637, slip op. at p. 8 (Fed. Cir. June 10, 2014) ("Section 251 often applies to applicants' choices*, i.e.,* their deliberate decisions about what to say in their patents, not just slips of the pen.")

In still other cases, this Court has given examples of these "deliberate" actions. The most common is an inventor's conscious decision to narrow or cancel a claim during prosecution to overcome prior art. "The recapture rule 'prevents a patentee from regaining through reissue the subject matter that he surrendered in an effort to obtain allowance of the original claims.'" *Pannu v. Storz Inst., Inc.*, 258 F.3d 1366, 1371 Fed. Cir. 2001) (citations omitted).

Another "deliberate" action is acquiescing to the Patent Office's request to cancel claims to distinct inventions. Such deliberate acquiescence is what happened in *In re Weiler*, one of the primary cases Escort now relies on.

> Significantly, Weiler accepted issuance of the '923 patent with its claims to a single elected invention. By acquiescing in the examiner's restriction requirement, and failing to file divisional applications on the subject matter of non-elected claims, Weiler foreclosed (because that was not error) his right to claim that subject matter [in a reissue patent].

*In re Weiler*, 790 F.2d 1576, 1582 (Fed. Cir. 1986); s*ee also In re Watkinson*, 900 F.2d 230, 231-232 (Fed. Cir. 1990) ("[T]he failure to file a divisional application…is not an error correctable by reissue under 35 U.S.C. § 251."); *In Re Dinsmore,* No. 2013-1637, slip op. at p. 8 (Fed. Cir. June 10, 2014) (applicants intentionally filed a terminal disclaimer that contained no error).

As described in more detail below, Mr. Fleming testified at trial (and the district court expressly relied on his credibility) that he never made a deliberate decision to not draft or otherwise forego any of the subject matter claimed by his reissue claims. It was not until 21 months later (when he first discovered certain prior art and commercial products) that he realized he had made a mistake and erred by failing to appreciate the full scope of his invention when he originally drafted his patent claims. (*Infra* at pp. 47-49.)

## E. Escort Incorrectly Describes The Trial Evidence

Escort's cross appeal fails to address—much less cite—the pertinent trial evidence, so Mr. Fleming attaches the record of the reissue evidence. (A5659:32:14-A5660:37:19; A5672:84:22-A5675:97:13; A5792:116:23-A5797:121:23; A5894:218:22-A5900:224:18; A5909:233:13-A5911:235:15; A5917:241:17-A5920:244:21; A5945:269:2-A5950:274:16; A5962:19:7-A5963:23:6; A5965:29:6-A5965:31:3; A5978:83:2-A5983:101:15.)

This evidence shows the Patent Office first awarded Mr. Fleming the '798 patent on March 20, 2001, which is the predecessor patent to the '038 and '653 patents. (A5710:34:7-10.) Mr. Fleming then created a calendar event to alert him 21 months later (3 month shy of the 24-month deadline under 35 U.S.C. § 251) to review the '798 patent for errors. (A5672:86:11-A5673:88:5.) As part of Mr. Fleming's review (21 months later), he conducted a prior art and literature search,

which uncovered a prior art reference (the Ross patent) and a Uniden radar detector, each of which Mr. Fleming previously had been unaware of, and each of which made Mr. Fleming realize for the first time that he had made mistakes when originally writing the '798 patent claims.   (A5673:88:17-89:9; A5793:117:6-A5796:120:9;  A5927:251-A5928:252:25.)   Specifically, each reference/product made Mr. Fleming realize for the first time that the '798 patent claimed more (in some cases) and less (in other cases) than he had a right to claim.  (A5673:91:6-A5674:92:11; A5927:251-A5928:252:25; 5979:85:9-23.)

As allowed by § 251, Mr. Fleming sought to correct his errors by writing and applying to the Patent Office for new claims.   (A5674:93:23-94:9; A5920:244:16-21.)  At no time prior to Mr. Fleming writing these new claims did they exist, physically or mentally.  In other words, at no time prior to Mr. Fleming realizing he had erred when drafting the '798 patent claims, had he ever made any decision (one way or the other) to draft, suggest, pursue, or not pursue the new '038/'653 patent claims in connection with the '798 patent.  (A5899:223:7-17; A5910:234:6-A5911:235:15;  A5920:244:16-21;  A5928:252:13-25;  A5965:29-31:3; 5979:86:18-87:13; A5979:88:8-5980:92:8; A5983:101:10-15.)   Those new claims simply never occurred to him until after he saw the Ross patent and the Uniden product, and then in 2007, an Escort product.   (A5945:269:2-A5949:273:22;.)   Notably, in an admission that devastates its appeal, Escort

completely agrees. (Opp. Br. at p. 62 ("[Mr. Fleming] never attempted or intended during prosecution of his original patent to add the claims that were ultimately submitted with either the '038 patent or the '653 patent." (citing A5965:29:6-21).)

### F.  Escort Incorrectly Describes The District Court's Decision

Instead of seeking review of the district court's decision, Escort's cross appeal requests that this Court supplant the role of the district court by re-evaluating the credibility of all the trial witnesses and other trial evidence to arrive at a different conclusion. Indeed, the totality of Escort's cross appeal makes only one passing reference to the district court's decision when attempting to distinguish one of the many cases the district court cited in support of its ruling. (Opp. Br. at p. 64.)

Escort's tactic is not a mere briefing ploy but a substantive and procedural defect that dooms its appeal. As described above, this Court only reverses district court judgments in these circumstances if it finds (1) the district court's relevant findings of fact are clearly erroneous, or (2) the district court erred as a matter of law when applying the appropriately supported, pertinent facts. (*Supra* at pp. 40-43.) Nevertheless, Escort failed even to identify the district court's findings of fact, much less show they are clearly erroneous. (Opp. Br. at pp. 59-65.)

Had Escort tried to distinguish the district court's findings of fact, it would have been unable due to the unequivocal nature of the trial evidence. For example, the district court's decision shows it found the following facts:

> In 2001, Fleming received his original patent, the '798 patent. Later, Fleming became aware of another patent – the Ross patent – and new products on the market, made by Uniden, Cobra, and Escort. In light of these discoveries, Fleming reviewed his '798 patent and realized that some of its claims were too broad and others too narrow. More specifically, he decided to narrow some claims because they might be invalid as written in light of the Ross patent, and he decided to broaden other claims to encompass the new products on the market.

> To make these changes, Fleming asked the PTO to reissue his '798 patent. He filed two reissue applications, and the PTO granted both, resulting in the reissue patents '038 and '653.

(A25-26.) This squares precisely with the evidence advanced at trial (A5945:269:2-A5949:273:22; A5980:91:11-92:8), none of which Escort challenges.[10]

The district court found these facts based not only on the documentary evidence but also on the credibility of the witnesses who testified. For example, again unchallenged by Escort, the district court further held as follows:

> Based on the trial testimony, the Court finds that Fleming made a genuine error rather than a deliberate choice that later proved

---

[10] The district court dismissed Escort's argument that Mr. Fleming could not have erred when drafting the '798 patent claims because his drafting technique was influenced by his background as a computer programmer. This Court should similarly dismiss that argument. Everyone has a drating technique premised on their life experiences. Yet, no one's technique—no matter how it is characterized—is necessarily error free.

disadvantageous.  The Court finds credible Fleming's testimony that he did not discover his drafting errors until almost two years after the '798 patent issued….

Escort argues that Fleming failed to explain how he "only came to appreciate his inventions at some later time."  But Fleming did explain this – he testified that in the process of checking for errors in his '798 patent, years after it issued, he discovered for the first time the Ross patent and analyzed for the first time competitor's products that had just entered the market.  It was these discoveries that led him to "appreciate" the errors he had made in his '798 patent and prompted him to seek reissued patents.

The Court cannot find merit in any of the arguments raised by Escort on this issue.  Escort has not identified anything in the record which undermines Fleming's claim that these were innocent errors, rather than a calculated decision intended to obtain some tactical advantage.  And, Flemings' testimony to that effect at trial was credible.

(A27-28 (citations omitted) (emphasis added).)

As the Supreme Court and this Court have ruled, a district court's credibility findings "can virtually never be clear error" due to the unique perspective the district court has when receiving the evidence.  For example, in *Anderson* the Supreme Court stated:

When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings…When a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

470 U.S. at 575 (emphasis added); *see also, Hambsch v. Dep't of the Treasury,* 796 F.2d 430, 436 (Fed. Cir. 1986) (stating that "[t]o the extent that the petitioner's

claim is based on a challenge to the presiding official's credibility determinations, we reiterate our previous holdings that these determinations are virtually unreviewable") (emphasis added).  This explains Escort's complete failure to address the district court's findings of fact and its credibility determinations.

### G.     This Court's Precedent Expressly Rejects Escort's Only Legal Argument

Escort's cross appeal is premised on a disturbingly incorrect recitation of (1) the trial evidence and (2) principles of law this Court's precedent expressly rejects.

As to the facts, Escort argues:

> The pertinent facts are not in dispute.  It is undisputed that Fleming's sole purpose for the claims of the '038 and '653 patents was to cover products he saw on the market after his original patent issued.

(Opp. Br. at p. 61.)    That is a shockingly incorrect argument.    Both the uncontroverted trial testimony and documentary evidence, as well as the district court's decision, show that 21 months after his original '798 patent issued Mr. Fleming discovered for the first time both prior art and certain products that made him realize (for the first time) that he had erred by failing to appreciate the full scope of his invention when he drafted the '798 patent claims.  As the district court held, which Escort conspicuously ignores:

> [Fleming] testified that in the process of checking for errors in his '798 patent, years after it issued, he discovered for the first time the Ross patent and analyzed for the first time competitor's products that had just entered the market.  It was these discoveries that led him to "appreciate" the errors he had made in his '798 patent and prompted

him to seek reissued patents.

(A27 (citations omitted); A5945:269:2-A5949:273:22; A5980:91:11-92:8.)[11]

Finally, this Court's precedent expressly rejects Escort's only legal conclusion, which Escort admits is the "determinative" aspect of its cross appeal:

> Fleming also admitted at trial that during prosecution of his original patent, he had no intention to add the claims that were ultimately submitted with the '038 and '653 patents. In other words, he never attempted or intended during prosecution of his original patent to add the claims that were ultimately submitted with either the '038 patent or the '653 patent. For this reason, he did not make an error that that (sic) prevented his intent from being fulfilled. [Citing *Weiler*.] Fleming's admitted lack of intent during prosecution of his original patent to draft claims that were ultimately submitted with the '038 and '653 patents is relevant, and ***determinative***, because it demonstrates he never made an error correctable through reissue

(Opp. Br. at p. 62 (citations omitted) (emphasis added).) In *C.R. Bard,* the accused infringer made the exact same argument, *i.e.,* that an error only occurs if the

---

[11] Escort's obvious attempt to turn this issue into a sinister effort by Mr. Fleming to draft his claims to cover certain products has been expressly rejected by this Court, as the district court acknowledged. (A27 ("When the inventor has made a genuine mistake, there is nothing improper about seeking a reissue to ensure that the patent covers a competitor's products. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 874 (Fed. Cir. 1988).").) *See also Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 909, n. 2 (Fed. Cir. 2004) ("The district court recognized that it is not improper for an applicant to broaden his claims during prosecution in order to encompass a competitor's products, as long as the disclosure supports the broadened claims."); *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1481 (Fed. Cir. 1998) ("[I]t is neither illegal nor bad faith for an applicant to amend the claims in view of a competitor's product."); *Synthes USA, LLC v. Spinal Kinetics, Inc.,* 734 F.3d 1332, 1341 (Fed. Cir. 2013) (same); *Arcelormittal France v. AK Steel Corp.,* 2013 U.S. Dist. LEXIS 153416 at *17-18 (D. Del. October 25, 2013) (it is "perfectly legitimate" to use the reissue process to draft claims covering a competitor's product).

inventor originally intended to include (in the original application) those claims that later issued in a reissue patent. This Court flatly rejected that argument:

> M3 Systems states that since the needles were not claimed originally they were not "intended" to be claimed, and that absence of such intent is not an error correctable by reissue. That too is an incorrect statement of the law. An inventor's failure to appreciate the scope of an invention at the time of the original patent grant, and thus an initial intent not to claim the omitted subject matter, is a remediable error. *See In re Amos,* 953 F.2d 613, 619, 21 USPQ2d 1271, 1276 (Fed. Cir. 1991) (reissue application not subject to rejection for failure to demonstrate initial intent to claim, when subject matter of reissue claims satisfies § 112 requirements); *In re Weiler,* 790 F.2d 1576, 1581, 229 USPQ 673, 676-77 (Fed. Cir. 1986) ("intent to claim" is shorthand for a means of measuring whether required error is present).

*C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1354 (Fed. Cir. 1998). Notably, *C.R. Bard* distinguishes *In re Weiler,* the same case Escort principally relies on.[12]

Accordingly, Escort's cross appeal should be denied because not only does it fail to even try to raise an error in the district court's findings of fact or its

---

[12]*In Re Weiler* relates to the patentee's intentional surrender of claim coverage during prosecution due to a conscious decision to acquiesce to the patent examiner's restriction requirement. "Significantly, Weiler accepted issuance of the '923 patent with its claims to a single elected invention. By acquiescing in the examiner's restriction requirement, and failing to file divisional applications on the subject matter of non-elected claims, Weiler foreclosed (because that was not error) his right to claim that subject matter." 790 F.2d 1576, 1582 (Fed. Cir. 1986). The *Weiler* facts have nothing to do with this case because—as Escort concedes— the evidence shows Mr. Fleming did not acquiesce to any surrender of patent claims due to a restriction requirement or otherwise.

credibility determinations, this Court's precedent expressly rejects Escort's only legal argument.

## V.   CONCLUSION

For the foregoing reasons, Mr. Fleming respectfully requests an order reversing the district court's denial of his three renewed JMOLs, and further ordering that each of the following claims is not invalid in view of the corresponding references: (1) '038 patent claims 18 and 45 in view of the alleged Orr Prior Invention; (2) '038 patent claims 1 and 18 in view of the alleged Orr Prior Invention in combination with Hoffberg; (3) '038 patent claim 18 in view of the alleged Orr Prior Invention and Ross; and (4) '038 patent claims 47 and 48 in view of the alleged Orr Prior Invention and Valentine.  Mr. Fleming also requests that Escort's cross appeal be denied.

Dated: July 30, 2014                    Respectfully submitted,

                                        _____/s/_____
                                        Michael Dowler
                                        Park, Vaughan, Fleming & Dowler LLP
                                        5847 San Felipe, Suite 1700
                                        Houston, TX 77057
                                        (713) 821-1540
                                        mike@parklegal.com

                                        Attorneys for Plaintiff-Appellant Hoyt
                                        Fleming

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the 30th day of July 2014, I caused this document to be filed electronically with the clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Gregory Ahrens
Brett Schatz
WOOD, HERRON & EVANS, L.L.P.
441 Vine Street
2700 Carew Tower
Cincinnati, OH 45202

Counsel for Defendants-Appellees

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of this document will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

Dated: July 30, 2014 _____/s/_____
Michael Dowler
*Attorney For Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(A)(i) and 32(a)(7)(B) because it contains 13,243 words, excluding (as permitted by Rule 32(a)(7)(B)(iii)) the table of contents, table of citations, and certificates of counsel.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in Times New Roman 14 point font.


Dated: July 30, 2014                    _____/s/_____
                                        Michael Dowler
                                        *Attorney For Plaintiff-Appellant*